IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**ANTOINE HILL,**

        Petitioner,

**Civil Action No.: 1:16cv231
(Judge Keeley)**

**B. VON BLANCKENSEE,**

        Respondent.

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On December 7, 2016, Petitioner Robert Antoine Hill ("Petitioner"), acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241, seeking additional Good Conduct Time credits ("GCT"). ECF No. 1. On December 8, 2016, Petitioner paid the $5 filing fee. ECF No. 4. On February 22, 2017, the Court entered an Order to Show Cause why the Petition should not be granted. ECF No. 6. On April 5, 2017, Respondent filed a response by filing a Motion to Dismiss the Petition or, in the Alternative, a Motion for Summary Judgment. ECF No. 14. On April 6, 2017, the Court entered a Roseboro Notice [ECF No. 15], informing Petitioner of his right and obligation to respond to Respondent's motion. On April 12, 2017, Petitioner filed a Motion for Rule 56 Summary Judgment [ECF No. 17], and on April 17, 2017, Petitioner filed his response to the Motion to Dismiss or for Summary Judgment. ECF No. 18. On December 5, 2017, Respondent was directed to file a supplemental response addressing Petitioner's clarified claim for relief as set forth in his response. ECF No. 20.

On December 12, 2017, Respondent filed his Reply [ECF No. 23], and on December 20, 2017, Petitioner filed a surreply. ECF No. 24. The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

## II.   BACKGROUND

Petitioner is currently serving an aggregate 137 month term of imprisonment imposed by the United States District Court for the Eastern District of Virginia on October 7, 2008. ECF No. 14-2 at 7. His current projected release date is May 18, 2018, via good conduct time release.  ECF No. 14-2 at 6.

The Petitioner was committed to the custody of the BOP on November 17, 2008. ECF No. 14-2 at 7. On July 6, 2009, Petitioner began taking GED classes. On October 6, 2010, while still enrolled in the GED program, Petitioner received an Incident Report for violations of BOP Disciplinary Codes 307 and 310.[1] Petitioner was found guilty of the offenses by the Unit Disciplinary Committee. Accordingly, he was placed in GED unsatisfactory ("UNSAT") status. On October 7, 2010, Petitioner voluntarily withdrew from the GED program. He did not re-enroll in the program until December 16, 2013. On August 28, 2014, Petitioner accrued the additional 240 hours of GED enrollment time required as a result of his disciplinary infraction, and was returned to GED satisfactory ("SAT") status. Petitioner subsequently completed the GED program on May 23, 2016. ECF No. 14-2 at 3-4.

---

[1] According to BOP Policy Statement 5270.09, Code 307 indicates "refusing to obey an order of any staff member" and Code 310 indicates "unexcused absence from any work or program assignment."

## III PLEADINGS

### A. The Petition

Petitioner asserts that he earned his GED after "being out for legal purposes." ECF No. 1 at 9. Therefore, Petitioner contends that his good conduct time should not have been taken from him. In addition, Petitioner alleges that pursuant to 28 C.F.R. § 544.71, the education staff should have documented that he was out of the literacy program for legal purposes. For relief, Petitioner requests that the Court require the BOP to give him back 48 days of good conduct time.

### B. Respondent's Motion to Dismiss or for Summary Judgment

Respondent acknowledges that Petitioner voluntarily withdrew from the GED program, but maintains that the reason he was placed in GED UNSAT status and therefore earned 42 days of good conduct time instead of 54 days per year, was because of his guilty finding as to the incident report he received on October 6, 2010.

### C. Petitioner's Reply

Petitioner notes inmates determined by staff to be temporarily unable to participate in the literacy program due to special circumstances beyond their control are exempt from the literacy program. Petitioner maintains that he was "on direct appeal and [] went out on a writ for legal purpose." ECF No. 18-2. Accordingly, Petitioner argues that he was exempt from participation and should have received the maximum allowable good conduct time. In addition, he argues that he has never "caught" a disciplinary infraction to cause him to lose good conduct time credit for anything nor an incident report occurring in the literacy program.

**D. Respondent's Supplemental Reply**

Respondent asserts that the Incident Report Petitioner received on October 5, 2010, stemmed from his refusal to attend class, stating that he had to go do his "legal work." ECF No. 23-2 at 2. Respondent reiterates that Petitioner voluntarily withdrew from the GED program on October 7, 2010, and to facilitate his voluntary withdrawal, he completed an Inmate Request to Staff Member on October 7, 2010, acknowledging that although he had already completed 240 hours of instructional time, he was withdrawing from the program. ECF No. 23-2 at 6. The form notes that staff discussed Program Statement 5350.28, Literacy Program, Unsatisfactory Progress Assignment and **loss of Good Conduct Time.** Petitioner expressed his understanding and requested not to participate in the Literacy Program. Id. Finally, Respondent notes that it was not until October 28, 2013, approximately three years after his voluntary withdrawal from the Literacy Program, that Petitioner went out on a federal writ while housed at FCI Cumberland. He was out on writ until November 13, 2013, or approximately 16 days. ECF No. 23-1 at 3, ¶ 9. He was again released on writ for one day on March 24, 2015. Id. ¶ 10. The final time Petitioner was released on federal writ was on March 26, 2014, and he returned to FCI Cumberland on April 14, 2014, or approximately 20 days. Id. ¶ 11.

**E. Petitioner's Surreply**

Petitioner maintains that he was never "put out" of the GED program. After completing 370 hours, he maintains that he asked what he could do to handle his affairs for legal purposes. Petitioner alleges that he completed an Inmate Request to Staff which gave specific details of what was going on. Petitioner further alleges that he met

4

with his case manager, unit manager, instructor, and teacher and was given the status of 544.71 except from required literacy program participation for legal purpose. In addition, Petitioner alleges that the Incident Report was reversed and remanded by the Mid-Atlantic Regional Office due to the fact that he had the right to participate in the use of law library reference materials to assist him in resolving legal problems. Petitioner reiterates that inmates determined by staff to be temporarily unable to participate in the literacy program due to special circumstances beyond their control are exempt from the literacy program but are required to participate when the special circumstances are no longer applicable. Petitioner then maintains that between 2010 and 2014, he was transferred several times through holdovers from FCI Cumberland to FCI Dix and FCI Morgantown as well as being out on writ for court and, "at the end of the day when the special circumstances no longer were applicable, [he] earned his 'GED'!" ECF No. 24 at 4. Accordingly, Petitioner requests that his Good Conduct Time be restored.

## IV. STANDARD OF REVIEW

1. **Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations" but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted

unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## 2. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So, too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light

most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986)

## V. DISCUSSION

The BOP is required to provide literacy programs for inmates in federal institutions. <u>See</u> 18 U.S.C. § 3624(f). In particular, this section of the Code directs the BOP to determine a mandatory period of time that each eligible inmate is **required** to attend the literacy program. (emphasis added). Pursuant to the statutory mandate found in 18 U.S.C. §3624(f), the BOP requires any inmate without a high school diploma or GED to attend instruction until such time as he/she completes 240 hours of attendance or obtain a GED, whichever occurs first. <u>See</u> 28 C.F.R. § 544.70. Inmates in this category must participate in the literacy program and participation is not optional. The BOP denies certain privileges to any inmate who refuses to participate in or withdraws from the program before the minimum 240 hours is completed.

Section 3624 of the United States Code also directs the BOP to implement "appropriate incentives which lead to successful completion of such programs." See 18 U.S.C. § 3624(f)(2). As a result, if an inmate does not obtain his GED within the 240 hours, the BOP offers GCT credits to encourage further participation. Specifically, 54 days of GCT will be awarded annually if the inmate has earned or is making satisfactory progress towards his GED. 28 C.F.R. §523.20(c)(1); see also 18 U.S.C. §3624(b) ("In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma, or an equivalent degree. Credit that has not been earned may not later be granted."). Therefore, once an inmate has completed the

mandatory 240 hours, he is not subject to any disciplinary sanctions if he voluntarily withdraws. However, if he does not obtain his GED within that mandatory 240 hours and refuses to participate beyond that period to obtain his GED, the BOP does reduce the rate of GCT earnings. Specifically, if an inmate chooses not to pursue a GED beyond the mandatory 240 hours, 28 C.F.R. § 523.20(c)(2) provides that the BOP shall award only 42 days of GCT credit per year. See also BOP Program Statements 5350.28 and 5884.43.

Federal courts have held that prisoners do have a liberty interest in **earned** GCT credits because they directly and inevitably affect the duration of a prisoner's confinement. See, e.g., Louis v. Dep't of Corr. Servs. Of Neb. 437 Fed 3d 697, 700 (8th Cir.) ("The inmates possess a protected liberty interest in not being arbitrarily deprived of their good-time credits, and thus NSP [Nebraska State Penitentiary] must observe due process when creditors are in issue.") cert. denied, 549 U.S. 847 (2006); Bridgman v. Ault, No. 98-2681, 1999 WL 425834, at *1 8th Cir. June 14, 1989) ("An inmate must be afforded procedural protections before being deprived of a protected liberty interest in good-time credits") (citing Wolff v. McDonnell, 418 U.S. 539, 561-66 (1974)).

However, the GCT credit that Petitioner is disputing in this case, is not earned time that is being disallowed as a result of some serious misconduct on his part. Rather, Petitioner has not accumulated the maximum GCT credit because he voluntarily withdrew from the literacy program. See, e.g., Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (holding that inmate has no liberty in the opportunity to earn good time credit); Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir. 1991) (noting that w]hen [a] statute

is framed in discretionary terms there is not a liberty interest created") (internal citations omitted).

In the instant case, there are alternate explanations why Petitioner earned only 42 days of GCT for the nearly four year period between October 2010, and August 2014. First, Petitioner was found guilty of a disciplinary infraction while enrolled in the literacy program.[2] This placed him in GED UNSAT status, and he could only accrue a maximum of 42 days GCT per year while in that status. He did not return to GED SAT status until August 28, 2014, when he completed the additional 240 hours. Only then was he eligible to earn up to 54 days of GCT per year.

The second reason Petitioner earned only 42 days per year of GCT during the relevant four year period is because he voluntarily withdrew from the GED literacy program. Petitioner accurately notes that there are exemptions to required literacy program participation. Relevant to this case is the exemption for "inmates determined by staff to be temporarily unable to participate in the literacy program due to special circumstances beyond their control (e.g., due to a medical conduction, transfer on writ, on waiting list for initial placement)." 28 C.F.R. § 544.71.

As previously noted, Petitioner maintains that he was given that exemption after he was interviewed by BOP staff regarding his October 7, 2010, Inmate Request to Staff

---

[2] The undersigned recognizes that Petitioner alleges that the incident report in question was reversed and remanded by the Mid-Atlantic Regional Office. However, Petitioner did not supply a copy of his appeal or the results of the same. The only "evidence" before the Court indicates that the United Disciplinary Committee found Petitioner guilty and recommended 90 days loss of visitations privileges starting October 7, 2010. ECF No. 23-2 at 3. Admittedly, the Committee advised Petitioner of his right to file an appeal within 15 days [Id.], but there is no proof that Petition did appeal or, if he did, that the Committee's finding of guilt was reversed. More importantly, even if Petitioner's assertion is accurate, he still voluntarily withdrew from the GED literacy program, thereby rendering him ineligible to earn more than 42 days per year of good conduct time until he completed an additional 240 hours of enrollment.

Member.[3] However, staff at FCI Butner II determined that the "legal purpose" for which Petitioner voluntary withdrew from the program, working on filings for a pending legal matter, did not exempt him from Literacy Program participation. ECF No. 23-1 at 2-3. Moreover, although Petitioner was out on a federal writ from October 28, 2013, until November 12, 2013, on March 24, 2014, and again from March 26, 2014, until April 14, 2014, he was not enrolled in the literacy program during those dates, and had not been since his voluntary withdrawal on October 7, 2010. Therefore, while he would have been exempt during those approximately 37 days, and would have continued to receive 54 days of GCT per year, he could not be exempted from a program from which he was not enrolled.

## VI. RECOMMENDATION

For the foregoing reasons, it is hereby recommended that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 14] be **GRANTED**, Petitioner's Motion for Rule 56 Summary Judgment [ECF No. 17] be **DENIED;** and the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this

---

[3] Petitioner indicated that he was requesting to drop out of school after he had stopped going because the school would not let him do his legal work, and "they" wrote him up for doing his legal work. He further noted that he had a case in court and he needed to do his legal work. ECF No. 23-2 at 6.

recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the District Court. The Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case. The Clerk is further **DIRECTED** to mail a copy of this Report and Recommendation to Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and provide a copy to counsel of record via electronic means.

DATE: January 4, 2018.

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE